## WILLIAM BREWSTER *versus* JOHN DREW
### March 29, 1842.

G. C. Bates, attorney for plaintiff.
A. D. Fraser, attorney for defendant.

[INDORSEMENT]

Sup Court: 1st Cir.
Jan^y 1842

Brewster
vs.
Drew

Mem° of Opinion
29 March '42
delivered—

[OPINION]

William Brewster
vs.
John Drew

This case was certified to this Court by the Presiding [Judge] of the 2$^{d}$ Circuit, from Wayne Cir. Court, and presents a question raised upon Dem$^{r}$ to the 3$^{d}$ & 4th Count[s] of Plffs declaration—These two Counts are the same, only varied as to the description of two different notes—

Plff as the Indorsee sued the Deft as indorser of two notes made by E. Morse & Co, and pay$^{e}$ to the order of, and indorsed by the Deft—

In the 3$^{d}$ & 4 Counts, there are no averments of demand of payment of the maker, or notice of non payment to the indorser, but it is averred that the Deft, at the time of the indorsement rec$^{d}$ indemnity from the maker, and that Deft has not sustained any damage—

That part of the Count which avers these facts, is in these words

"And the said Plff avers that at the time of the making of said note as aforesaid, towit: on the 10th day of March 1838, at Detroit aforesaid, the said E. Morse & Co. *assigned, transferred* and *delivered* to the said John Drew a large amount of property to secure and indemnify him the said John Drew as indorser aforesaid, of great value, towit: of the value of $10,000, which said security, property, and indemnity, the said John Drew held and retained in his possession as security aforesaid at and from the time of the making of the said note until the time the said note became due, towit, on the 11th June 1838, at Detroit aforesaid, and the said Plff

avers that the said Deft hath not *sustained any damage* by reason of his not having rec^d notice of the non payment of said note, all of which said several premises the said Deft had notice."—

To this Count the Deft demurs alleging for cause that these allegations do not dispense with the necessity of presentment and notice to the indorser

The only question, therefore, which is presented by the pleadings in this case is whether an indorser of a promissory note taking an assignment of property from the maker at the time of indorsing as collateral security to indemnify him against his liability as indorser, is entitled to the usual notice of non payment?

The liability of an indorser, being conditional, and not absolute in the first instance, the general rule is that, in order to charge him, there must be a demand upon the maker, and notice to the indorser of non payment.

But, on the part of the Plff, it is insisted that the facts averred in the Count in question, bring this case within a recognized and well established exception to the general rule. And to maintain this proposition, several authorities have been cited—

Those principally relied [upon], however, are Corney vs. Da Costa 1 Esp. R. 302. 3 Kents Com. 79. Bond et al vs. Farnham, 5 Mass. R. 170. Mead vs. Small, 2 Greenleaf, R. 207. Barton vs. Baker, 1 Serg. & R. R. 334. Prentiss vs. Danielson, 5 Conn. R. 175. & The Merchants Bank of N. Y. vs. Griswold, 7 Wend. R. 165.

It will be necessary, therefore to examine these authorities, with such others as relate to the question—In the case of *Corney* vs. *Da Costa*, the Deft was not held liable, on the ground of his liability as an indorser merely. Da Costa & Co.

compounded with their creditors, and drew notes payable to the Deft, and at the same time put property to the am$^t$ of the composition into the hands of the Deft. And it was held that Deft was not entitled to notice—he having no remedy over; and having in his hands the fund with which to pay the notes.

—The Court held there that the Deft was liable at all events, not upon any condition—And it would be a fraud for the Deft to call upon the maker, who had provided and left in his hand property to meet the note—

In the 3 Kents Com. 79, it is laid down that "if the indorser has protected himself from loss by taking collateral security of the maker of the note, or an assignment of his property, it is a waiver of his legal right to require proof of demand & notice."

—And in support of this proposition, the learned commentator cites  Bond vs. Farnham—5 Mass R.  Mead vs. Small 2 Greenleaf R. & Prentiss vs. Danielson 5 Conn. R. 175.

In the case of Bond et al vs. Farnham—Deft was sued as indorser of a note made by Barker—Before the note became due, Barker became insolvent, and the Deft having indorsed other notes for him, he obtained from Barker an assign$^t$ of all his property as security which was insufficient to meet the Defts liabilities—and it further appeared that the Deft had offered to pay the note to the Plffs if they would take foreign bank notes.

*Parsons* Ch. J. in giving the opinion of the note [court] says that "under the circumstances of this case the Deft had no right to insist upon a demand upon the maker. It appears that he knew such a demand would be fruitless, as he had secured all the property the maker had. And as he secured it for the express purpose of meeting this and his other in-

dorsements, he must be considered as having waived the condition of his liability, and as having engaged with the maker, on receiving all his property, to take up his notes. And the nature or terms of the engagement cannot be varied by an eventual deficiency in the property, because he received all that there was. This intent of the parties is further supported by the offer of the Deft to the Plffs to take up this note if they would receive foreign bank notes in payment —We do not mean to be understood that when an indorser receives security to meet particular indorsements, it is to be concluded that he waives a demand or notice as to any other indorsements." "But we are of opinion that if he will apply to the maker, and representing himself liable for the pay$^t$ of any particular indorsements, receives a security to meet them, he shall not afterwards insist on a fruitless demand on the maker, or on a useless notice to himself, to avoid pay$^t$ of demands, which, on receiving security, he has undertaken to pay."

The Ch. Jus. further adds "The case most analogous to this is, where the drawer of a bill had no effects in the drawee's hands. He cannot insist on a demand upon the drawee, for he could not expect an acceptance, and he suffers no injury for the want of it. The indorser of a note resembles the drawer of a bill—Although once having effects, as he had a demand on the maker, yet he has afterwards withdrawn from the maker all his property, to enable himself to meet his own indorsements, and had not, when the bill was payable, any remedy, unless perhaps the miserable one of seizing the body of a man worth nothing: and that remedy he has never lost."

It will be seen that the decision in this case, does not support the rule laid down in 3 Kents—The ground of this decision was not that the indorser had merely taken security,

or an assignment by way of indemnity against his conditional liability as indorser—But that the indorser had taken all the means of the maker, to enable the indorser to meet the liability—

The Court say the nature of the transaction is such, that the indorser must be considered as having engaged with the maker to take up the note— —That having taken all the means which the maker had to meet the note, the indorser is to be regarded as having the fund to provide for the payment, and is therefore, himself the principal debtor—

The case of *Prentiss* vs. *Danielson* 5 Conn. R. 175. is next refered to. This case I have not been able to find—

Mead vs. Small, 2 Greenleaf R. 207. is also cited to support the doctrine in 3 Kent Com.

That is the only case which, in terms, goes to support the doctrine. In that case the indorser held a mortgage from the maker as collateral and sufficient security for the am$^t$ of the note. The case was decided upon the authority of Bond vs. Farnham. 5 Mass. R.

Mellen Ch. J. in delivering the opinion of the Court says—

"These facts present a stronger case in favor of the Plff, than those in the case of Bond vs. Farnham. There the property pledged was not a *sufficient* indemnity, to the indorser, but it was all the maker had. Here it is proved to be sufficient. If the indorser has protected himself from eventual loss by his own act in taking security from the maker, such conduct must be considered as a waiver of the legal right to require proof of demand and notice."—

Now with all deference for this very respectable authority, I must say that, the true ground upon which the case of Bond vs. Farnham was decided, was entirely misap-

prehended or overlooked—Ch. J. Mellen says the case of Bond vs. Farnham was not so strong a case as the one before the Court, because the security in that case was insufficient to meet the Defts liability, When Ch. J. Parsons expressly says the nature & terms of the engagement cannot be varied by a deficiency in the property.—The true ground in 5 Mass. was that the indorser had *got all* the makers property, and like a drawer of a bill who had no funds in the hands of the drawee, and had no reasonable expectations that the bill would be excepted—was himself the proper party to provide for pay[t].—

So that so far from the case in 2 Greenleaf being a stronger case for the Plff than the 5 Mass. R., they have nothing in common and cannot be compared together.

The am[t] of the *security* was considered the strong ground in favor of the Plff, in the one case—but in the other the *nature* of the *transaction* between the maker and the indorser was the ground upon which the Plff recovered—

The case of Barton vs. Baker, 1 Serg. & R. 334, was also cited by the Counsel for the Plff—In that case, as in the case of Bond vs. Farnham, the maker had assigned *all his property* to the indorser to indemnify him for his advances and indorsements, it was held that the holder of the note was excused from proving a regular demand & notice in order to charge the indorser.

In that case, and in the case of *Bond* vs. *Farnham*, the decisions seem to have been made upon the supposition that the indorser of a promissory note, and the drawer of a bill of exchange, are placed in the same situation as to their liabilities, and their right to insist upon notice—So far as this right may be affected by the want of funds in the hands of the drawee of the bill, and a want of reasonable expectation of acceptance by the drawee, and a reasonable expectation

by the indorser that the note would be or has been paid by the maker.

, And this supposed analogy has occasioned some inconvenience in several of the English cases, respecting the rights of indorsers of promissory notes—

—A distinction seems first to have been taken in the argument of Counsel in the case of Nicholson vs. Gouthit, 2 H. Bl. 609, where it was contended, that altho notice of the dishonor of a bill drawn without funds in the hands of drawee, need not be given, yet that the rule in the case of promissory notes is totally different, and notice must in all cases be given to the indorser—

And in delivering the opinion of the Court Lord Ch. J. Eyre assented to this distinction, and admitted the rule with respect to notice to the indorser, to be as stated. He therefore reversed his own decision at Nisi Prius, and granted a new trial upon the strict law, contrary to his ideas of the Justice of the case.

That was a very strong case, because the indorsement was made in consequence of a previous engagement on the part of the indorser to guaranty the payment of a debt due from the maker of the note, who appears from the transaction to have been in bad circumstances at the time, and who became insolvent before the note was payable.

From his connection with the maker, and from other circumstances, the indorser must have known that the maker would not pay the note, and it was the understanding of all parties that it should be paid by the indorser.

The justice of the case was said to be clearly with the Plff., and under the impression that the want of notice could not injure the Deft, the Lord Ch. J. *had at the trial* instructed the jury that it was unnecessary, and indeed that it might be considered as received by anticipation—

In the case of French vs. The Bank of Georgetown 4 Cranch R. 141—where the decisions of the subject were reviewed, Marshall Ch. J. in delivering the opinion of the Court, says "However, then, the law may be with regard to the drawer of a bill of exchange, who from other circumstances may fairly draw, but who has no funds in the hands of the drawer; it seems settled in England, by the case of Nicholson vs. Gouthit, that the law with regard to a promissory note is different, and that if, in any case, where the note is made for the benefit of the maker, notice to the indorser can be dispensed with, it is only in the case of an insolvency known at the time of indorsement." And he adds—

"In point of reason, justice and the nature of the undertaking, there is no case in which the indorser is better entitled to demand strict notice than in the case of indorsement for accommodation, the maker having received the value."—

Several other cases are found where the same doctrine has been laid down in respect to the indorser of a note, which go further to establish the distinction between the right of a drawer of bill to demand notice, when he had no funds in the hands of the drawee, and no reasonable expec[ta]tion that the bill would be accepted, and the right of an indorser of a note to require notice, notwith[stand]ing there was the strongest evidence to show that the indorser must have known that the maker would not, or had not paid the note—

In Dwight vs. Scovill, 2 Conn. R. 654 it was held that notice to the indorser was necessary under the following circumstances—

A person was a member in each of two copartnerships—one of which made the note and the other indorsed it—Swift Ch. J. in delivering the opinion of the Court, says, "It is true one of the Defts must, in legal consideration, have known that the note was not paid; but he equally well knew that

the note when it became due had not been presented to the makers, and pay$^t$ demanded. He knew the fact that exonerated the Defts from all liability on their indorsement; and it would be strange logic to say that this knowledge rendered the Defts liable."

In the case of Ireland et al. vs. Kip, 11 Johns 231, the Plff offered to prove on the trial, for the purpose [of] holding the Deft liable as indorser of a note, that the maker of the note had failed before it became due, and that he had conveyed his property in trust, to secure and indemnify the Deft against his indorsement, and that the trust fund was amply sufficient to indemnify him. This evid. was a rejected and a non-suit entered—and on motion to set aside the non-suit, the motion was denied.

But the strongest case upon this point is that of Magruder vs. The Union Bank of Georgetown, 3 Peters R. 87.

There the maker of the note died before it became due, and the indorser was appointed administrator to this estate.

On the part of the Defts in Error, the Plffs below, it was contended in argument—that the indorser having taken adminis[tra]tion of the estate of the maker, was to be considered as the payer of the note—and as such was bound to pay without demand—& no demand on him being required, it was useless to give him notice that he had not done what he well knew he had omitted. That the purpose of the rule as to notice did not exist in that case, if notice was required to enable the indorser to secure himself by calling on the drawer, this could not be done; and that as he had the estate of the maker of the note in his hands for his indemnity, no demand or notice was necessary. That the law never requires that to done which is useless: and therefore the Deft in Error, who could not by the notice or by its omission have affected

the rights of the indorser, or his means of protecting himself from loss, was not required to give it.

In giving the opinion of the Court Marshall Ch. J. says "The general rule that pay$^t$ must be demanded from the maker of a note, and notice of non pay$^t$ to the indorser, in order to render him liable, is so firmly settled that no authority need be cited in support of it. The Deft in Error does not controvert it, but insists that this case does not come within it; because demand of pay$^t$, and notice of non pay$^t$ are totally useless, since the indorser has become the personal representative of the maker. He has not, however cited any case in support of this opinion, nor has he shown that the principle has ever been laid down in any treatise on promissory notes or bills.

The Court ought to be well satisfied of the correctness of the principle, before it sanctions so essential a departure from established usage." "The fact that the indorser is the representative of the maker does not oppose any obstacle to proceeding in the regular course"—"If this unusual mode of proceeding can be sustained, it must be on the principle that, as the indorser must have known that he had not paid the note, as the representative of the maker, notice to him was useless. Could this be admitted, does it dispense with the necessity of demanding pay$^t$? It is *possible* that assets which might have been applied in satisfaction of this debt, had pay$^t$ been demanded, may have received a different direction. It is possible that the note may have been paid before it fell due.

*Be this as it may,* no principle is better settled in commercial transactions, than that the undertaking of the indorser is *conditional*. If due diligence be used to obtain pay$^t$ from the maker, without success, and notice of non pay$^t$ be given to him in time, his undertaking becomes absolute; not otherwise.

Due diligence to obtain pay$^t$ from the maker, is a condition precedent, on which the liability of the indorser depends. As no attempt to obtain pay$^t$ from the maker, was made in this case, and no notice of non pay$^t$ given to the indorser, we think the Circuit Court should have given the instructions prayed for by the Deft in that Court"—

This appears to me a very strong case. The indorser must have known that the maker had not paid the note—It was his duty to provide for and make the pay$^t$—He had the whole of the makers estate in his hands in trust to pay all his debts— Neither of these facts, nor all combined were considered sufficient to warrant the Court in departing from the general rule.

Not on the ground that the Indorser would suffer any injury—Ch. Jus. Marshall says it is possible that the maker had paid the note before it fell due—or that it was possible the assets which might have been applied in pay$^t$ of the note in question, had notice been given, may have been otherwise applied—

After supposing these possible, but improbable results— He goes on to say "be this as it may."—as much as if he had said supposing even that there could be no possible loss or inconvenience to the indorser from want of notice, yet "no principle is better settled in commercial transactions, than that the undertaking of the indorser is conditional—And that due diligence to obtain pay$^t$ &$^c$ is a condition precedent, on which the liability of the indorser depends"—

Had such just views been taken by the Courts in some of the earlier cases, where exceptions [could] have been easily made to the general rule; and the Courts had looked at the *nature* of the *engagement* entered into by the indorser, and had endeavored to carry his undertaking into effect, instead of speculating upon the possible injury to the indorser in cer-

tain cases, where a departure from the general rule has been urged, much litigation would have been saved, and great inconvenience avoided—

Even if it were conceded that, as between the parties, in all those cases where notice has been dispensed with, justice had been done, yet a wide door has been opened for litigation, and the uncertainty of the rules by which commercial engagements are to be governed, has occasioned much greater mischief, than would have arisen from a failure of equitable justice in a few cases, by the uniform observance of a general rule of law, equally known to all.

That there are exceptions to the general rule is not intended to be questioned; but as observed by Marshall Ch. J., in the case of French vs. Bank of Georgetown, "The Court ought to be well satisfied with the correctness of the principle, before it sanctions so essential a departure from established usage."

In the case of Corney vs. Da Costa, the very nature of the undertaking on the part of the indorser, was not conditional, but absolute, and on that ground the case was decided—

This was not strictly an exception to the general rule, that an indorser is entitled to notice—

In the case of the Merchants Bank of N. Y. vs. Griswold, 7 Wend R. 165. the indorser after the making of the note, received in trust, an assign$^t$ of property and outstanding debts from the maker, with a power to sell the property and collect the debts for the express purpose of meeting the note.

In other words he had consented to take funds to meet the payment of the note, and to act as the agent of the maker in making such payment. And it was as good ground upon which to dispense with notice to him, as if the maker had left the money with the Deft the day before the note became due,

with instructions to take up his note the next day—

There is an averment in the Counts demurred to that the Deft has not sustained any damage by reason of his not having received notice of non pay$^t$ of said note—

But this can avail nothing—no evidence could be received in support of this averment.

In the case of Dennis vs. Morrice, 3 Esp. R. 158, where to excuse the holder of a bill for not having given notice to the drawer of non pay$^t$ by the acceptor, an offer was made to prove, in fact, that the Deft had not been prejudiced by the want of notice, Lord Kenyon said, "This would be extending the case [rule] still further than ever has been done, and opening new sources of litigation in investigating whether in fact the drawer did receive a prejudice from this want of notice or not"—and the evidence was rejected—

In the case now before the Court the property is alleged to have been assigned by the maker to the Deft to secure and indemnify him against his liability as indorser—There is no allegation that there was any authority on the part of the Deft to dispose of the property for the purpose of paying the holder—nothing showing that the Deft had undertaken to provide the means for the payment of the notes.

It was a transaction between the maker & the indorser, by which the indorser provided for security in case his conditional engagement should become absolute, and he be obliged to pay the money.

That the prudence of an indorser, in taking security from the maker, as indemnity against eventual and contingent liability on his conditional undertaking as indorser, should be construed as changing the nature of such an undertaking into an absolute undertaking, by which he would be liable in the first instance and at all events, without the holder's mak-

ing any attempt to get pay$^t$ of the maker, cannot, certainly, be sustained either upon principle or authority.

We are, therefore, of the opinion that the facts alleged in the 3$^d$ & 4th Counts of Plffs declaration, do not present such a case as dispenses with a demand of pay$^t$ upon the maker—and notice to the indorser—and that the Dem$^r$ be sustained—